### Richmond

CLARENCE WARD KEEL

V.

LINDA L. KEEL

June 17, 1983.

Record No. 802029.

Present: All the Justices.

*Glenn Randall Croshaw; Jonathan L. Hauser; John W. Drescher (Pickett, Lyle, Siegel, Drescher & Croshaw, on brief), for appellant.*
*Donald G. Wise* for appellee.

THOMAS, J., delivered the opinion of the Court.

In this child custody case, the trial court denied a petition to transfer custody of two minor children from their mother to their father. The father's appeal raises two issues: (1) whether the trial court employed the correct test for deciding when a change in custody is warranted, and (2) whether the trial court considered all evidence relevant to a change in custody. We think the trial court employed an erroneous test and excluded relevant evidence. Therefore, we will reverse and remand this case for further proceedings.

Clarence and Linda Keel were married in July 1966. Three children were born of their marriage, which ended in divorce on May 10, 1974. In the final decree, custody of all three children was awarded to Linda. However, in February 1975, by joint agreement between Clarence and Linda, custody of the oldest child, whom Linda found difficult to control, was transferred to Clarence. Thus, from February 1975 to the present, two of the Keel children have lived with their mother and the other with his father.

In August 1980, while the two children whose custody is entrusted to Linda were visiting with their father in Virginia Beach, he filed a Petition for Custody in the Circuit Court of the City of

Portsmouth, the court in which the divorce had been granted and the two custody orders entered. Linda, who lives in Fredericksburg, responded promptly with a motion for Clarence to show cause why he was not in contempt of the existing custody order by not turning the two children over to her immediately. She claimed that Clarence had kept the children longer than had been agreed for their vacation.

The petition and the motion came on for an expedited hearing on August 7, 1980. The trial court heard evidence on the issue whether the custody of the two children should be transferred from their mother to their father pending a full hearing on his petition. The court concluded that custody should remain with their mother pending the outcome of a full hearing. In addition, the court found no merit to the contempt motion and dismissed it. A full hearing was set for September 1980 and the case was continued until then.

On September 23, 1980, the trial court heard testimony *ore tenus*, talked to the two children off the record *in camera*, and ruled that custody of the children should remain with their mother. Clarence appealed. He contends that custody of the children should have been awarded to him. We are not able, on this record, to resolve the question of which parent should have custody, and we express no view on that subject. Our treatment of the case leaves that question open for further consideration by the trial court.

I.

It is plain from the trial court's own words that throughout the hearings held in August and September 1980, it "misinstructed itself" as to the proper test for determining when a change in custody is warranted. The trial court concluded that in order to secure a change in custody the burden was upon plaintiff to prove the existence of circumstance in the home of the custodial parent that were harmful to the children.* As is shown more fully below,

---

* As best we can determine, when the trial court expressed concern about the existence of conditions harmful to the children as the basis for changing custody, it had in mind Code § 16.1-251, § 16.1-252, or § 16.1-253. These sections are respectively titled "Emergency removal order," "Preliminary removal order; hearing," and "Preliminary protective order." They are contained in the statutes relating to Juvenile and Domestic Relations District Courts. They mention harmful conditions affecting the subject children. But those statutory provisions are not applicable in the present case.

this test was too restrictive because it takes a one-sided view of a many-sided problem.

Linda argues that the trial court's test was correct because it was applied in the context of a temporary custody hearing in which the trial court was called upon to make a hasty decision on where the children should be placed pending a full hearing. Her argument on this point is without merit for at least two reasons. First, there is but one test in child custody controversies between parents of minors. In *Mullen* v. *Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948), we said that "the welfare of the infant is the primary, paramount, and controlling consideration of the court *in all controversies between parents over the custody of their minor children.* All other matters are subordinate." (Emphasis added.) This is an unvarying test. Though the test may be refined in change of custody cases, the general principle that the welfare of the child is paramount must be adhered to whether the question is temporary custody or permanent custody. Second, even if Linda's argument were correct with regard to the existence of a different standard where temporary custody is the issue, her argument would not explain the fact that the trial court repeated the same test in September, during the full hearing. The wrong test was applied in both portions of the two-part proceeding.

The error in the test applied by the trial court is that it focuses only upon whether there has been a *negative* change in the circumstances surrounding the custodial parent. But the inquiry in a child custody case cannot stop there. It is also pertinent whether there has been a *positive* change in the circumstances surrounding the noncustodial parent. But even that inquiry does not go far enough because there could exist a change in the circumstances of the children themselves that might require a change in custody even though the court is unable to discern any appreciable change in the circumstances of either parent. The correct test requires an analysis of the circumstances of both parents and the children. In addition, it is concerned with positive as well as negative changes.

By way of explaining its approach, the trial court stated that it was attempting to avoid a "yo-yo" effect where the children would be "yanked" back and forth from one parent to the other. The trial court espoused the view that once custody is determined it should not be changed except in extreme circumstances. Though the general principle of stability in custody matters is a salutary one, here the trial court overstated its

importance. We agree that it is wise to settle custody questions to the greatest degree of certainty possible, but we recognize that the entire issue of child custody is fraught with uncertainty. Therefore, although a settled environment may have its benefits, it is simply another factor to be considered in determining the best interests of the children. It cannot be used to preclude examination of other pertinent factors. Further, the facts of this case reveal that here the trial court's concern about the so-called "yo-yo" effect is misplaced because, to date, there has never been a change in the custody of the two children whose interests are here under review.

█ Moreover, instead of taking a narrow view that once custody is decided it should stay decided absent "gross changes that threaten harm" to the children, the better view is the one we expressed in *Andrews v. Geyer*, 200 Va. 107, 111, 104 S.E.2d 747, 750-51 (1958), where we wrote as follows:

> The awarding of the care and custody of children involves a most perplexing question. It is indeed rare when a court can be positive, at the time, that its award will prove to be for the best interest of the child, which is the paramount question. The uncertainty involved is the reason for § 20-107, Code of Virginia 1950, which empowers the court to alter or change the custody of children, viewed in the light of subsequent events. Relief under this statute remains within the court's jurisdiction throughout the infancy of the child involved, and *affords a degree of comfort to a court having the heavy responsibility of determining custody.*

(Emphasis added.) Change of custody cases provide the trial courts with important opportunities to ascertain whether the original custody award is serving the best interests of the children. Here, the trial court's concerns regarding the "yo-yo" effect and permanence of the original custody award caused the court to circumscribe unduly its review of the facts.

█ The test that should have been applied has two prongs: first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children. *See Collins v. Collins*, 183 Va. 408, 32 S.E.2d 657 (1945), and *Darnell v. Barker*, 179 Va. 86, 18 S.E.2d 271 (1942). The "change in circumstances" referred to in

the first prong of the test is not limited to whether negative events have arisen at the home of the custodial parent. It is broad enough to include changes involving the children themselves such as their maturity, their special educational needs, and any of a myriad of changes that might exist as to them. It is also broad enough to include positive changes in the circumstances of the noncustodial parent such as remarriage and the creation of a stable home environment, increased ability to provide emotional and financial support for the children, and other such changes.

■ The second prong of the test is in accord with the countless cases in which we have stated that the best interests of the children are paramount. Thus, despite changes in circumstances, there can be no change in custody unless such change will be in the best interests of the children. The second prong, then, is clearly the most important part of the two-part test. It underscores the importance we place upon securing the best interests of children whose interests, in the final analysis, must be protected by the courts.

## II.

■ Because it applied the wrong test, the trial court was unable to make correct rulings on the relevance of evidence presented by the parties. Knowledge of the correct issue is all important in determining relevance, because relevant evidence is nothing more than that evidence which tends to prove or disprove an issue in the case. The trial court did not state the correct issue and consequently erred with regard to the relevance of certain proffered evidence.

Here, as we have seen, the trial court was of the view that the issue was whether there had been a change in the circumstances in the home of the custodial parent that would make it dangerous for the children to continue to live there. Because of its view of the case, the trial court found irrelevant such evidence as whether Linda had had criminal charges filed against her; whether Linda had engaged in adulterous relationships with married men; whether some of Linda's relatives had a negative, antagonistic attitude towards her; whether Linda had had an abortion; whether the child in the custody of Clarence had an opinion on which parent should be awarded custody; and whether the children who are the subject of the custody suit had an opinion on which parent should be awarded custody. Some of this evidence may have been

relevant. The trial court was of the mistaken view, however, that the only relevant evidence concerned events and circumstances that had a direct, negative impact upon the children.

Linda argues that any errors in excluding relevant evidence that occurred in the August hearing were corrected in the September hearing. We disagree. We think that even in the September hearing the trial court continued to exclude evidence that may have been relevant. It would serve no useful purpose for us to examine the evidence bit by bit to determine what was relevant and what was not. Suffice it to say that we are convinced from the record that the most appropriate action is for the trial court to reexamine all the evidence in light of this opinion.

On remand, the trial court should consider the broadest range of evidence. There is no simple, mechanical, "cut and dried" way to determine whether there has been a change in circumstances. And certainly there is no simple, mechanical, "cut and dried" way to determine whether a change in custody will be in the best interests of the children. Yet, the trial court is bound to consider evidence sufficient to allow it to make a rational comparison between the circumstances of the two parents as those circumstances affect the children.

### III.

The overall aim of a court in a change of custody case must be to determine which home is "best" for the children. But by "best," we do not necessarily mean the most expensive home, or the one with the prettiest furnishings, or the one with the greatest number of "creature comforts." For we are firmly of the view that a house is not a home, that a home is more than bricks and mortar. "Best" to us is the home that will provide the children the greatest opportunity to fulfill their potential as individuals and as members of society.

To determine what is "best" for the children the court must engage in a comparative analysis. Such an analysis will permit the court to decide which parent is best qualified to provide the highest quality of care to the children. As we said in *McCreery* v. *McCreery*, 218 Va. 352, 355, 237 S.E.2d 167, 169 (1977):

> Quality is determined not only in terms of the training, talents, and resources of the custodian but also in terms of the motivation of the custodian to make proper provision for *the*

*physical needs of the child, its psychological and emotional health, its intellectual and cultural growth, and its moral development.* Although fully qualified in other respects, a person may be too ill-suited by temperament or too preoccupied with personal pursuits to administer proper care to a child. *Comparing the quality of care offered by two parents, the courts are guided by histories of past performance and prospects for future performance.*

(Emphasis added.) The trial court must neither take a myopic view of the facts, nor a technical view of the law. It must instead take a view, on behalf of the children, which recognizes that while the mother and father have lawyers to advance their cause, the children, in most cases, have no one on their side save the court.

On remand, the trial court should determine, in light of the circumstances existing at the time of the retrial and of the views expressed herein, in whose custody the two children should be placed.

In accordance with all of the foregoing, the decree of the trial court will be reversed and the case remanded.

*Reversed and remanded.*

COCHRAN, J., concurring.

I agree that the decree of the trial court should be reversed and the case remanded for further proceedings. The first question raised on appeal was whether the trial court failed to consider the mother's adulterous conduct. The trial court expressed disinterest in Linda's sexual relationships with married men. In *Brown* v. *Brown*, 218 Va. 196, 237 S.E.2d 89 (1977), on which Clarence relies, we said:

"In all custody cases the controlling consideration is always the child's welfare and, in determining the best interest of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which minor

children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding."

218 Va. at 199, 237 S.E.2d at 91.

Linda sought to distinguish *Brown* on the ground that her lovers, unlike the mother's lover in *Brown*, did not live in the home and provided less permanent relationships. But it appears from the record that the trial court either failed to follow *Brown* or to distinguish it.

The trial court also stated that in order to justify a change in custody there must be a finding of "gross conduct that makes it unsafe for the children. . . ." In *White* v. *White*, 215 Va. 765, 213 S.E.2d 766 (1975), on which Clarence relied, we held that even if a mother was not an unfit parent custody could properly be awarded to the father whose home, based "on the warmth and stability of the home environment" rather than any physical disparity, was more suitable. 215 Va. at 768, 213 S.E.2d at 768. It was not necessary, therefore to show that Linda was an unfit parent or that her conduct made it "unsafe" for the children to remain with her in order to justify a change of custody to Clarence. It thus appears from the record that the trial court either failed to follow *White* or to distinguish it.