COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Beales and Senior Judge Willis

CYNTHIA WEAVER

v.      Record No. 0224-06-2

RICHARD E. LLOYD

MEMORANDUM OPINION*
PER CURIAM
JULY 11, 2006

FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

(Cullen D. Seltzer, on briefs), for appellant.

(Deanna D. Cook; Bremner, Janus, Cook & Marcus, on brief), for
appellee.

Cynthia Weaver (mother) appeals an order of the trial court changing custody of the parties'

twin children to Richard Lloyd (father).  She contends "the trial court erred in determining that

when [mother], in good faith reported allegations made by her children that their father had sexually

abused them, a material change of circumstances had occurred and [mother] had alienated the

children's affection from their father."  Upon reviewing the record and the briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the

trial court.  See Rule 5A:27.

Background

Mother gave birth to twins, Katie and Kyle, on February 17, 2001.  At the time, mother and

father lived together.  They were not then and have never been married.  In May 2001, mother

moved out of the shared house and moved in with her parents, where she continues to reside.  In

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2002, the juvenile and domestic relations district court (juvenile court) awarded mother primary physical custody of the children and visitation rights to father.

In July 2004, father filed for a change of custody of the children. By order dated October 20, 2004, the juvenile court awarded father physical custody of the children, and gave mother visitation rights. Mother appealed that decision to the trial court.

On April 28, 2005, the trial court trial conducted an *ore tenus* hearing. Father testified that he exercised his court-ordered visitation until February 2004, when mother unilaterally stopped bringing the children to visit with him. Father attempted to call mother several times, but she would not answer his calls. Father learned through the Sheriff's office that mother made allegations that father had abused Katie. In May 2004, mother accused father of sexually abusing Kyle. Father stated that Katie would repeat negative things about him that mother told her. For example, father testified that Katie "would say something like, 'my mama says that you are not very nice to me' – talking to me - - she'll say 'my mama says you are mean.' Things like that." In October 2004, father asked mother to provide the children's birth certificates and social security cards to him so he could enroll them in preschool. Five months and several requests later, mother provided copies of those documents.

Mother testified about the allegations she made against father for sexually abusing the children. According to mother, in February 2004, Katie "put her hands down her pants" and told mother that "my daddy tickles me and his fingernails are so hard." Mother filed a complaint with the Sheriff. She did not contact father about the incident. Several months later, mother observed a blood blister on Kyle's penis. According to mother, Kyle said that "daddy hurts my pee pee." Mother contacted Kyle's doctor, took him to the hospital, and again alleged sexual abuse by the father. Mother denied talking about father in front of or with the children.

A number of agencies investigated the two sexual abuse allegations, including St. Mary's Hospital, Medical College of Virginia, Caroline County Sheriff's Office, the State Police Criminal Investigations Unit, and Caroline County Child Protective Services. All determined that the allegations were unfounded.

In March of 2004, mother started taking the children to Dr. Maurice Fisher, a social worker, for an evaluation regarding the allegations of sexual abuse. Following extensive interviews and discussions with the children, the parents, the police investigators, and social service agencies, Dr. Fisher informed mother that he found no evidence of sexual abuse. Moreover, Dr. Fisher was unable to find anyone involved in the case who could validate any complaints of sexual abuse by the children. Based on his conversations with the children, Dr. Fisher believed, from March until October, "there was a fair amount of conversation" in front of the children between the mother and the maternal grandmother concerning father and the allegations of sexual abuse.

After mother received Dr. Fisher's findings, she sought a second opinion from Cassandra McClarin, a licensed clinical professional social worker. McClarin's evaluation was based solely on discussions with mother and interviews with the children.

At the April 2005 hearing, Dr. Fisher opined that, "given the developmental age of these children," it was not "a good idea" to have the children seen by another counselor because "it creates a set of contradictions for them in a situation where they are already struggling with trust issues anyway." According to Dr. Fisher, the children do not need any further active counseling or therapy regarding mother's unfounded allegations of sexual abuse, and he opined that continued discussion of the allegations could "pathologize" the children and cause a "false positive." He found the children were more open and communicative than when they first began seeing him and indicated they were doing better because they have not been "as exposed" to the continued

- 3 -

allegations of abuse by mother and maternal grandmother, which abuse Dr. Fisher ruled out "within a reasonable degree of clinical certainty."

Peggy Lloyd, the children's paternal grandmother, testified that Katie used to be withdrawn, but has been more outgoing since the juvenile court changed custody to father.

At the conclusion of the April 28, 2005 hearing, the trial court withheld ruling on custody and ordered no further testing of the children. The trial court also ordered father to undergo a psychosexual evaluation and mother to submit to a general personality evaluation.

On August 26, 2005, the trial court granted father's petition and awarded him custody of the children. It noted that mother's initial complaints "were unfounded" and "[t]hey were continually unfounded." It found that mother's "alienation was established" and that the children "appear to be thriving," thus justifying a change in custody. The trial court also found that it was in the children's best interests to change custody to father.

Analysis

The decision to modify a child custody order is committed to the sound discretion of the trial court. See Wilson v. Wilson, 18 Va. App. 193, 195, 442 S.E.2d 694, 695-96 (1994). A party seeking to modify an existing custody order bears the burden of proving that a change in circumstances has occurred since the last custody determination and that the circumstances warrant a change of custody to promote the children's best interests. See Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983); see also Code § 20-124.2(B). However, if the court does not first find a material change in circumstances, consideration of the children's best interests is barred by the principles of res judicata. See Hiner v. Hadeed, 15 Va. App. 575, 580, 425 S.E.2d 811, 814 (1993). "'Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.'" Ohlen v.

Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (quoting Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1980)).

In deciding whether to modify a custody order, the trial court's paramount concern must be the children's best interests. See Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795-96 (1990). However, the trial court has broad discretion to determine what promotes the children's best interests. See Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986). As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

Mother has presented a single question on appeal:

> Whether the trial judge erred in awarding a change of custody of minor children from their mother, Cynthia Weaver, to their father, Richard Lloyd, based solely on evidence that the children's mother received credible complaints of abuse from her children and reported that abuse to appropriate officials which reports those officials later determined to be insufficiently proven to give rise to a formal finding of any person's guilt of abuse.

Despite the circumlocutory nature of the question, the issue on appeal is whether there was sufficient credible evidence to support the trial court's decision that a change in circumstances had occurred since the last custody determination and that the circumstances warranted a change of custody to promote the children's best interests. See Keel, 225 Va. at 611-12, 303 S.E.2d at 921.

The record contains sufficient evidence of changed circumstances and that a change in custody would be in the best interests of the children. Mother is not being punished for reporting the allegations of sexual abuse. Rather, it was her unending attempt to prove allegations that were determined to be unfounded and her practice of alienating the children from father that convinced the trial court to award custody to father. Mother made two unfounded claims,

months apart, that father sexually abused each child. Despite there being no evidence to support either allegation, mother persisted in questioning the findings of a number of reputable experts and agencies that are trained to investigate sexual abuse. In addition, she and the maternal grandmother routinely discussed and expressed their feelings about father in front of the children. Mother's unending attempts to prove allegations that were determined to be unfounded and her continued comments against father in front of the children established a course of action, intended or not, that tended to alienate the children from the father.

The trial court's decision to change custody based on a material change in circumstances was supported by credible evidence, as was the finding that a change was in the best interests of the children. Accordingly, we summarily affirm the trial court.

We hold that neither party is entitled to the costs of this appeal or to attorney's fees in this matter on appeal.

For the reasons stated, we affirm the trial court.

Affirmed.