COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


MARK A. DUDA
                                                            MEMORANDUM OPINION* BY
v.        Record No. 0511-06-4                          JUDGE JAMES W. HALEY, JR.
                                                              FEBRUARY 27, 2007
SHIRLIE A. McMANUS HUNT


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Arthur B. Vieregg, Jr., Judge

              John L. Bauserman, Jr. (Pikrallidas & Associates, on briefs), for
              appellant.

              Beth A. Bittel (Joshua R. Anthony; Law Offices of Beth A. Bittel, on
              brief), for appellee.


        Mark A. Duda ("father") appeals from the trial court's decree of January 28, 2006 on a

motion to modify visitation and child support.  Father presents three questions for review:

1) whether the trial court erred in failing to find a material change in circumstances to justify

father's requested changes in visitation; 2) whether the trial court erred in failing to deduct

one-half of father's self-employment tax from his gross income as required by statute; and

3) whether the trial court erred in assessing $12,000 in attorney's fees against father.  Shirlie A.

McManus Hunt ("mother") raises an additional question:  whether the trial court erred in

granting a downward deviation of $248 per month, or 80% of father's monthly health insurance

costs, from the child support guideline amount.  We affirm in part and reverse in part and

remand.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

STATEMENT OF FACTS

A. Visitation

Father and mother were married on December 31, 1994. They had two sons from this marriage, born July 19, 1995 and November 12, 1997. The parties were divorced by final decree of divorce on July 28, 2000. The initial order of custody and visitation in this case was entered on April 28, 2000. This order granted joint legal custody to both parents and physical custody with mother. Father was granted visitation on the following basis:

a) every other weekend starting at 6:00 p.m. Friday to 8:30 p.m. Sunday, and similar visitation every fifth weekend, extended to include Monday state and Federal holidays,

b) every Wednesday evening from 6:00 p.m. to 9:00 p.m. with father assuming responsibility for after school activities on those days,

c) Fourth of July in odd numbered years from 9:00 a.m. to 8:30 p.m.,

d) Thanksgiving holiday in odd numbered years from 6:00 p.m. on the Wednesday prior to Thanksgiving Day until 8:30 p.m. on the Sunday following Thanksgiving,

e) from 6:00 p.m. on Christmas Eve until 12:00 noon on Christmas Day in even numbered years and from 12:00 noon to 8:30 p.m. on December 26th in odd numbered years,

f) Easter Sunday in even numbered years from 9:00 a.m. to 8:30 p.m.,

g) one-half of the children's Christmas and spring school vacations,

h) three weeks of the children's summer vacation, with no more than two weeks contiguous,

i) some portion of each child's birthday and father's birthday,

j) Father's Day from 9:00 a.m. to 8:30 p.m. each year,

k) some portion of Halloween evening.

On June 14, 2005, father filed a petition to modify visitation and child support. He sought the following changes to visitation:

a) to extend weekend visitation to the following Monday or Tuesday mornings rather than 8:30 p.m. the preceding day,

b) to extend summer visitation from 3 weeks to 5 weeks,

c) to extend visitation to *any* Friday or Monday school holiday falling on his visitation weekends,

- 2 -

d) to extend every Wednesday visitation overnight to Thursday morning, and

e) to add visitation on the weekend before or after Thanksgiving when mother had custody for that holiday.

In support of his petition for overnight visitation, father testified that the current schedule was "very hectic" and that overnight visitation would allow the boys to "just go home" after practices and prepare for the next day in a more relaxed atmosphere, instead of being rushed to return to their mother's house by 9:00 p.m. With respect to extending summer visitation, father testified that the change would give them more time "to be a family" and would help the boys "learn[] things like a good work ethic" by watching their father's example. Regarding Thanksgiving visitation, father stated that in even years the current schedule results in visitation with his children for only "six hours in 26 days" in the Thanksgiving time period. Finally, with respect to extending visitation on school holidays, father testified that he simply wanted "more time with [his] kids" and that he was "looking for every minute [he] can get."

Father also testified extensively as to the boys' involvement in football, baseball, basketball, and soccer, and his role in encouraging their participation as a coach and as a parent. Father testified that the boys were "always doing something" and that they were "knee-deep" in sports activities. Father's petition for modification of orders of visitation and child support also stated that he wanted to "maximize his participation in the children's . . . extra-curricular, recreational, social and peer organizations and youth sports" as evidence that a change in visitation would serve the best interests of the children.

Mother provided testimony to the trial court regarding the boys' strengths and weaknesses, their academic performance, the type of schoolwork they were doing, the activities they were involved in, and her responsibilities respective to both academic and extra-curricular activities. She described the older boy as "very time-conscious," "[v]ery smart, very athletic" and "well-rounded." She described the younger boy as "very smart," "more interested in making

friends and being with friends than sports" and "a perfectionist" who "needs encouragement." She also testified on cross-examination that she believed that the younger boy "does sports to get his dad's acceptance."

Mother testified that she stopped sending the boys' homework with them to father's house because "[t]hey weren't getting completed." She stated that she "would have to stay up and do it with them . . . rather than do it in the morning because mornings are just too chaotic." She testified to a particular incident involving the older boy in which, after returning from father's house, "he couldn't go to bed" because "[h]e hadn't finished his homework" and mother had to stay up with him to finish it.

In regards to father's involvement with the boys' sports teams, mother expressed concern over father's "emphasis on sports over all else," testifying as follows:

> Q. Describe Mr. Duda's coaching style with regard to football.
>
> A. Intense. Irrational. He yells a lot. I think it's not as encouraging as it could be.
>
> Q. What do you mean by intense?
>
> A. I don't think it's age-appropriate. I think that they're all learning. . . . I think they need to be encouraged more. Not as intense as it is, like you must win.
>
> Q. What do you mean by irrational?
>
> A. Just his behavior. It's like its okay if they're winning but if they're not winning there's a lot more yelling. . . . I feel like there is so much pressure on [the older boy] in particular. . . . I just think that there's a lot of pressure on [the older boy] to do well and to impress his dad.
>
> Q. Can you give the judge an example of the yelling you've observed in regard to the football?
>
> A. Yelling is every time at football. Yelling at the kids for not doing well. I mean, even yelling on the phone.

*    *    *    *    *    *    *

Q.     Would you please describe Mr. Duda's coaching style when it comes to basketball?

A.     The same.  I think all of them are pretty much the same.

Mother also testified about two incidents in which father got into arguments with umpires at his children's baseball games.  On cross-examination, she stated that father was "more irrational than most coaches and more intense."  Those accounts were corroborated by mother's current husband, Christopher Hunt.[1]

In regards to the existing visitation schedule, mother testified that "It's made it very easy for the children because it's consistent . . . it has worked out very well for planning purposes and for consistency and structure for the children."  She also expressed "big concerns" about the overnight visitation request based on the issues of "getting them to school on time" and "[t]he organization, getting their lunches ready, backpacks all packed up."

The court's decree of January 28, 2006 denied the visitation changes sought by father, but modified visitation to the extent that the father's midweek visitation was changed to a Tuesday, Wednesday, or Thursday when neither child had a sports practice.

---

[1] Hunt testified to the following:

Q.     To what extent, if any, have you observed problems at sporting events with regards to the boys' dad?

A.     I would say yelling.  Probably I'd say yelling and sometimes negativity.

*     *     *     *     *     *     *

A.     Just yelling if some of the kids didn't do something right, or didn't agree with a call that the umpire made, or the play didn't go the way it was supposed to go . . . .

*     *     *     *     *     *     *

A.     I've seen a water bottle thrown on the floor.  I've seen just yelling because . . . things weren't going the way they were supposed to be going.

B.  Deductions from Gross Income

On June 24, 2003, father's child support obligation was set by consent decree at $2,200 per month.  In his petition of June 14, 2005, father sought to decrease the child support award.

Both parties agreed that mother's income had increased substantially since the last child support order was entered.  Father provided the court with a figure of $16,482 per month for his average gross income.  Father sought a deduction for one-half of his self-employment tax in the amount of $471 per month as well as a deduction for his health insurance expenses, which father testified are not subsidized by his employer, as they are for mother.  Father estimated the subsidy of mother's health insurance costs to be around 80% of the total cost and asked the court to deduct $272 per month for father's health insurance costs.  Father's tax return for 2004 was admitted into evidence and included a deduction of $3,720 for self-employed health insurance expenses.  In response, mother conceded that the court could consider health insurance expenses as a matter of equity and asked the court to "only do the 80 percent" and to "make it a deviation" rather than a deduction from gross income.

Mother presented the court with a child support guidelines worksheet that showed a presumptive child support amount of $1,917 per month, a decrease of $283 per month.  That worksheet used a monthly gross income figure for the father of $18,575 and included a deduction from his gross income for one-half of self-employment tax.  Mother again asked that any changes to this baseline amount be made in the form of a deviation rather than a deduction from gross income.

The court's order found father to have a gross monthly income of $19,503 and monthly business expenses of $927.60.  The court set the total child support obligation at $1,711 per month, a decrease of $489 per month, based on a child support amount of $1,959 per month

minus a downward deviation of $248 per month, reflecting 80% of father's monthly health insurance costs.

## C. Attorney's Fees

Mother submitted into evidence six bills from her attorney detailing the hours worked, the charges, and the reasons for those charges. Those bills totaled $12,692.50 in attorney's fees plus $507.65 in costs for photocopies, faxes, postage, and a court reporter for a sum total of $13,200.15. Based on those costs, plus the expected fee for representation at the trial court proceeding, mother asked for $13,500 in attorney's fees.

The court ordered father to pay $12,000 in attorney's fees. As the basis for its decision, the court stated, "[I]t is plain that Ms. McManus-Hunt has prevailed with respect to most of the disputed issues related to modification of visitation and child support. It is furthermore the case that Mr. Duda earns significantly more money than Ms. McManus-Hunt."

## ANALYSIS

### A. Visitation

In considering changes to visitation on appeal,

> the court's paramount concern is always the best interests of the child. . . . In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests. A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it.

Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990) (citations omitted); see Code § 20-124.2. See also Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Both parties' arguments rest strongly upon the Supreme Court of Virginia's decision in Keel v. Keel, 225 Va. 606, 303 S.E.2d 917 (1983). In that case, the Court established the following two-pronged test for determination of a change in custody or visitation: "[F]irst, has

there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." Id. at 611, 303 S.E.2d at 921; see also Albert v. Ramirez, 45 Va. App. 799, 806-07, 613 S.E.2d 865, 868 (2005).

Father argues that the trial court's ruling should be reversed on the grounds that the court erred in not finding a material change in circumstances.[2] However, father's argument completely ignores the second prong of the Keel test. Regarding the second prong, the Court in Keel stated, "[D]espite changes in circumstances, there can be no change in custody *unless* such change will be in the best interests of the children. The second prong, then, is clearly the most important part of the two-part test." 225 Va. at 612, 303 S.E.2d at 921 (emphasis added).

Thus, even assuming, without deciding, that father met his burden of proving a material change in circumstances, this Court must still consider the evidence that the trial court placed the best interests of the children as its foremost consideration and properly denied father's petition to modify visitation. See Sullivan v. Jones, 42 Va. App. 794, 811-12, 595 S.E.2d 36, 44-45 (2004).

In its decision, the trial court stated:

> Much evidence was introduced related to the boys' involvement in sports, especially football, basketball and baseball, that have principally been encouraged by their father . . . [who] was a college athlete and . . . has been very active in coaching his sons in sports.
>
> The evidence, however, also demonstrates that Mr. Duda has on occasion exhibited a lack of self-control and poor judgment in coaching . . . the evidence suggests that he has emphasized perfection and success . . . and that he has exhibited inappropriate anger; that he has placed an inordinate emphasis on winning, and has criticized young boys when they have not performed up to his expectations.

---

[2] In order to support a change to the existing visitation order, father presented evidence of three material changes in circumstances: 1) that he had moved closer to mother's residence; 2) that the boys had advanced in age; and 3) that the boys were involved in a number of extra-curricular activities that they were not involved in before, thereby reducing the time they have to spend with father.

When dealing with boys this age, such an emphasis is off the mark if overemphasized. . . . What the boys and their teammates need, above all else, I would suggest, is constructive attention that builds self-confidence.

\*     \*     \*     \*     \*     \*     \*

This Court is far more impressed with Ms. McManus-Hunt's testimony that learning the lesson that one doesn't always win in sports rather than the suggestion that boys like to win . . . . Her observation, indeed, recognizes lessons from sports that will be invaluable in life . . . . Mr. Duda's conduct . . . is a red flag, and . . . he might well be advised to modify or even seek counseling to avoid further going down the road of an overemphasis on athletics and winning, and, more importantly, how to constructively address the needs of his boys.

More importantly, he might well consider what are the lessons that are most important in sports, and what will be most important to these boys to prepare them for manhood.

\*     \*     \*     \*     \*     \*     \*

Ms. McManus-Hunt's testimony that Mr. Duda's actions as a coach were often non-age-appropriate for young boys . . . age 10, and . . . age 8, was credible and corroborated. Mr. Duda did not evince sufficient understanding of the effect of such conduct on his boys.

While the father stated his belief that the boys' participation in sports "has helped to work hand-in-hand [with academics] and is helping their grades get better," the trial court clearly shared the mother's concerns about father's overemphasis on sports. Mother also argued that a change in visitation would not be in the boys' best interests because "the children are doing well," and the current schedule "has worked for a very busy three years."

The trial court indicated that it had more confidence in mother's "ability to evaluate her boys' needs at this stage in their lives" and that, as a result, "a majority of the credit for their success today is attributable to her . . . ." The court emphasized to father that "the problem may not be one solved by more time but by better use of the time that is available and . . . the extent to which that time is devoted only to sports." Given the combined force of the testimony involving

father's behavior and the fact that father's petition specifically listed more time for sports activities as a reason to extend visitation, the trial court's concerns are well supported. Thus we find that the trial court's ruling on visitation was within its discretion and should be affirmed.[3]

As to the slight modification to the visitation order that was made by the court, this Court has stated, "[O]nce the issue of the appropriate custody or visitation plan for the children was before the court, the court was not required to adopt either parent's suggested remedy." Cloutier v. Queen, 35 Va. App. 413, 424, 545 S.E.2d 574, 579 (2001). As with any custody or visitation issue, the court's controlling consideration remains "the best interests of the child." The trial court's statement that "the boys' interests will be served by switching Mr. Duda's midweek visitation to another day" indicates the court's due consideration of that factor and the ruling will be affirmed on that point.

### B. Deduction from Gross Income for Self-Employment Tax

The trial court erred in failing to follow the statutory guidelines requiring a deduction of one-half of self-employment tax from father's gross income. Code § 20-108.2(C)(4)(ii) reads, "For the purposes of this subsection . . . one-half of any self-employment tax paid *shall* be deducted from gross income." (Emphasis added). The trial court relied on a 1996 circuit court opinion in denying father's request to allow this deduction from gross income. However, that court necessarily applied the "reasonable business expenses" clause of the statute for its analysis because the statutory deduction considered here did not come into effect until 2002.[4]

---

[3] Father also argued that the trial court failed to give reasons, either orally or in writing, for its finding that no material change in circumstances had been proven. That argument was not preserved, as required by Rule 5A:18, either at the trial court or in father's statement of objections to final decree, and will therefore not be considered on appeal.

[4] Prior to 2002, self-employment taxes could only be deducted from gross income under the reasonable business expenses clause of Code § 20-108.2. However, in 2002 the quoted portion of the statute was added requiring deduction of one-half of such expenses from gross income.

On this question, we reverse and remand this case for further proceedings in the trial court to include the deduction in calculating father's gross income.

## C.  Reduction in Child Support

"Code § 20-107.2(2) vests discretion in the trial court in awarding child support and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Young v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986) (citations omitted).  At trial, the court permitted a downward deviation in child support in the amount of $248 per month.  The adjustment was calculated as a deviation, rather than a deduction from gross income, at mother's request.  The court found that father's health insurance costs were $3,720 per year, and the deviation was based on 80% of the monthly health insurance costs, again at mother's request.

While mother argues that there was no evidence supporting the 80% figure, she conceded to the trial court that her health insurance costs, which were in evidence, were partially subsidized by her employer.  She also conceded that the court "might as a matter of equity" make a deduction to father's gross income to account for the disparity with father's health insurance costs, which were also in evidence.  The 80% figure was an approximation provided to the court by father in closing arguments and was never challenged by mother.  As a result, the court adopted mother's suggestion that the court use the 80% figure, as opposed to deducting 100% of father's health insurance costs.  This determination is plainly within the trial court's discretion under the Code and will not be overturned by this Court.

## D.  Attorney's Fees

An award of attorney's fees in a divorce suit is discretionary with the court after considering the circumstances and equities of the entire case and is reviewable on appeal only for an abuse of discretion.  Gamer v. Gamer, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993).  This Court has stated,

> [T]he key to a proper award of counsel fees is reasonableness under all the circumstances revealed by the record. Although evidence of time expended by counsel and the charges made to the client is the preferred basis upon which a trial judge can formulate a reasonable award, it is not the only basis.

McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985). This Court has previously considered the economic situations of the parties to be a reasonable factor in determining awards of attorney's fees. See Barnes v. Barnes, 16 Va. App. 98, 106, 428 S.E.2d 294, 300 (1993). Thus, we find that the trial court in this case did not abuse its discretion making the award.

Affirmed in part,
reversed in part,
and remanded.