COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Fulton
Argued by videoconference

UNPUBLISHED

REBECCA B. HILL

MEMORANDUM OPINION* BY
v.      Record No. 0039-21-2           JUDGE RANDOLPH A. BEALES
                                        DECEMBER 7, 2021

JOHN R. DeMOTT


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Sarah J. Conner (Rick A. Friedman, II; David G. DeFazio; Lindsay
G. Dugan; Friedman Law Firm, P.C., on brief), for appellant.

No brief or argument for appellee.


In this case, Rebecca B. Hill ("mother") appeals from an order of the Circuit Court of

Chesterfield County denying her motion to amend child custody. Mother argues that the trial court

erred in finding that no material change in circumstances had occurred since the trial court's

previous child custody award and thus also erred in denying her motion to amend legal custody.

I. BACKGROUND[1]

On appeal, we view the facts in the light most favorable to appellee, John R. DeMott

("father"), as we must because he prevailed in the trial court. Khalid-Schieber v. Hussain, 70

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The record in this case was sealed. Nevertheless, this appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by the parties. Evidence and factual findings below that are necessary in order to address the assignments of error on appeal are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Va. App. 219, 223 (2019). Mother and father were married on June 30, 2012. Together they have one child, E.G.,[2] whom they adopted during the marriage. The parties were divorced in 2019, and the trial court entered an order in which it awarded mother and father joint legal custody of E.G. The trial court made written findings concerning E.G.'s best interests pursuant to Code § 20-124.3.

E.G., a seven-year-old girl, has suffered from various health issues for much of her life. Before the parties divorced, E.G. had been diagnosed with bilateral kidney reflux disease, and she had also received therapy for anxiety and other issues. She also started having sleeping issues and behavioral issues.

Consequently, in its written findings concerning E.G.'s best interests in making the original custody award, the trial court found, "[The child] has physical health issues. These issues include bilateral kidney reflux disease, which simply stated, means that urine flows backward from the bladder to the kidneys. This condition creates an increased risk for urinary tract infections. This infection risk is mitigated through a regimen of prophylactic antibiotics." The frequent antibiotics that E.G. took to manage her kidney reflux disease, however, also caused recurring yeast infections that must be treated when they occurred. The trial court thus found that E.G.'s "age, combined with her medical challenges, requires her caretakers to be particularly careful about and monitor the child's bathroom habits, medication regimen and general health." The trial court also found that E.G.'s "mental health and development are, in large measure, age appropriate and otherwise unremarkable in the context of both the high conflict divorce of her parents and the physical health issues she suffers."

The trial court also noted in its written findings that E.G.'s parents did not get along well. Mother had sought sole legal custody of E.G. since the beginning of the divorce proceedings and did "not agree to share legal custody with Father." The trial court found, "Mother is not a co-parent

---

[2] We use initials to refer to the child in an attempt to better protect her privacy.

with Father for [E.G.]. Mother does not share control easily." Although the trial judge did not question mother's parenting skills and attentiveness to E.G.'s needs, he found that mother attempts to maintain complete control over E.G. "by presenting as a benevolent dictator." In answering questions for an evaluation related to the initial custody determination, mother had stated, "The only obstacle I have to successful co-parenting with Mr. Demott is Mr. Demott himself" – an assertion the trial judge said that he found "breathtaking."

In December 2019, mother filed a motion to amend child custody alleging that a material change in circumstances had occurred that necessitated giving mother sole legal custody of E.G. She alleged that father had become "increasingly obstructionist" as it related to E.G.'s care, which prevented mother from adequately addressing E.G.'s healthcare and educational needs. In March 2020, before the trial court held a hearing on mother's motion to amend, mother also filed a "Motion for Expedited Hearing" because E.G. needed surgery to address her bilateral kidney reflux disease and mother alleged that father had denied that E.G.'s "surgery is immediately necessary." Father testified that he never objected to the surgery being performed and that he never voiced an objection to the doctors about their performing the surgery. [3]

On June 5, 2020, the trial court heard mother's motion for expedited hearing. After each party presented evidence, the trial court found that "[i]t was necessary for [E.G.]'s upcoming surgery and its related conditions that Ms. Hill have sole-decision making authority." The trial court then entered an order on June 10, 2020, temporarily giving mother sole decision-making authority over E.G.'s medical treatment "[a]s it pertains to the minor child's bilateral kidney

---

[3] Mother testified that E.G.'s "surgery had been delayed for almost a year" because father had refused to agree to the surgery. She claimed father disagreed with the doctor's diagnosis and sought a less aggressive approach. Father testified that surgery had been raised a year prior as an option "if things did not get better." Father took the position that when "looking at a five-year old, talking about going in for major surgery, if there is an option to do something nonsurgical, that would be a better option." Father testified that E.G.'s doctor ultimately did not recommend surgery at that time.

disease, surgery, or post-surgical recovery" until further order of the trial court. The trial court also scheduled the matter for a final hearing on August 21, 2020.[4] E.G. had her surgery the next day, June 11, 2020.

At the final hearing on mother's motion to amend, the trial court heard testimony and took evidence on events that had transpired since the entry of the final divorce decree. The trial court heard that E.G. had begun taking prescription medication to address her sleep and behavioral issues. Her school administered assessments which indicated E.G. had developmental delays and struggles with learning. An individualized education plan ("IEP") was developed for the child after discussion between mother, father, and E.G.'s school. Dr. Mulreany – E.G.'s primary care physician – diagnosed her with attention deficit disorder ("ADD") and prescribed medication for her to address this issue as well.

Father testified that, contrary to mother's allegations, he never refused to give E.G. antibiotics or medication prescribed by the child's doctors. Although he did object to a particular sleep medication Dr. Mulreany prescribed, Clonidine, he gave E.G. the Clonidine and expressed his concerns about the medication's side effects to Dr. Mulreany. Father testified that he kept "detailed records while she was with us on her night terrors and the negative effects." Father gave Dr. Mulreany the information, and Dr. Mulreany subsequently changed E.G.'s medication. Father then administered the new prescription sleep medication to her.

Mother testified, at the final hearing, that father failed to communicate with her about E.G.'s needs. For example, she claimed that father did not respond when she emailed him asking if he had received the draft IEP the school had sent them, so the next day she sent a follow-up email asking whether father had any thoughts or suggestions. Father then responded to the follow-up email and

---

[4] The trial court referenced these actions in its October 30, 2020 opinion letter, when it stated, "On 5 June 2020, after hearing evidence and argument, the Court ordered *pendente lite* relief as set forth in the 10 June 2020 order."

replied that the IEP seemed "to be the same as was discussed at the last meeting" and that "it's [*sic*] seems straight forward."

On October 30, 2020, the trial court issued an opinion letter regarding mother's motion to amend child custody. The trial court found that E.G. "continues to have significant health issues" and that she "has emerging developmental and educational deficits as well" but further found that the "heart of the parent[s'] dispute" was the parental decision-making process. The trial court found that "Mother's testimony was not so persuasive nor Father's so deficient that Mother has produced a sufficient quantity of evidence to meet her burden of proof on the material change in circumstances question." As such, the trial court stated, "Speaking to the issue upon which this case turns. Has there been sufficient evidence presented of a material change in circumstances involving the parental decision-making process or its consequences for this child in this family? The Court finds there has not. Mother's motion is therefore, Denied." The trial court entered its order denying mother's motion to amend child custody on December 15, 2020. Mother appealed that December 15, 2020 order to this Court.

## II. ANALYSIS[5]

Mother contends that the trial court erred in denying her motion to amend legal custody. In her first assignment of error, mother argues that "[t]he trial court erred in finding no material change in circumstances where the evidence presented established several material changes in circumstance." In her second assignment of error, mother contends that "[t]he trial court erred in finding no material change in circumstances while simultaneously listing significant issues that the child has suffered since the entry of the last Order ('emerging developmental and educational deficits')." In her third assignment of error, mother argues that "[t]he trial court erred in requiring Appellant to prove 'sufficient evidence presented of a material change in circumstances involving

---

[5] Appellee did not file a brief or present oral argument in this matter.

the parental decision-making process or its consequences for this child in this family' in order to obtain her requested relief." In her fourth assignment of error, mother contends that "[t]he trial court erred in ruling that any material change in circumstances does not warrant a change in legal custody where the evidence presented raised significant issues relevant to the issue of decision-making authority." Finally, in her fifth assignment of error, mother argues that "[t]he trial court erred in denying Appellant's Motion to Amend Legal Custody after finding sufficient evidence to enter the June 10, 2020, Order granting the Appellant sole decision-making authority in certain circumstances."[6]

In deciding a motion to amend child custody, the trial court "must apply a two-pronged test: (1) whether there has been a [material] change in circumstances since the most recent custody award; and (2) whether a change in custody would be in the best interests of the child." Ohlen v. Shively, 16 Va. App. 419, 423 (1993) (alteration in original) (quoting Visikides v. Derr, 3 Va. App. 69, 70 (1986)); see also Keel v. Keel, 225 Va. 606, 611 (1983). As a threshold matter, the trial court must first decide "'whether there has been a [material] change in circumstances since the most recent custody award.' If so, the trial court must next determine 'whether a change in custody would be in the best interests of the child.'" Surles v. Mayer, 48 Va. App. 146, 171 (2006) (alteration in original) (quoting Ohlen, 16 Va. App. at 423); see also Keel, 225 Va. at 611; Wheeler v. Wheeler, 42 Va. App. 282, 289 (2004). The material change in circumstances requirement exists "to avoid the bar on relitigation that would otherwise be imposed by *res judicata*." Parish v. Spaulding, 26 Va. App. 566, 573 (1998) (citing Hiner v. Hadeed, 15 Va. App. 575, 580 (1993) ("In the absence of a material change in circumstances, reconsideration . . . would be barred by principles of *res judicata*.")), aff'd, 257 Va. 357 (1999); see also Wheeler, 42 Va. App. at 289.

---

[6] Mother included three additional assignments of error, but in her brief she expressly withdrew those three assignments of error – assignments of error six, seven, and eight. Therefore, we do not reach them in this appeal.

- 6 -

Furthermore, the party who makes the motion to amend child custody bears the burden of showing that each prong of this test is satisfied.  Surles, 48 Va. App. at 171.  Therefore, unless the moving party presents sufficient evidence of a material change in circumstances, the first prong of the test, the trial court cannot grant a motion to amend legal custody.  See id.

The question of "[w]hether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence."  Ohlen, 16 Va. App. at 423 (quoting Visikides, 3 Va. App. at 70).  "'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of the children."  Parish, 26 Va. App. at 573 (citing Keel, 225 Va. at 611-12).  When considering whether a material change in circumstances has occurred, the trial court must not limit its decision only to questions concerning changes in the parents' circumstances.  Keel, 225 Va. at 611-12.  The trial court must also consider "changes involving the children themselves such as their maturity, their special educational needs, and any of a myriad of changes that might exist as to them."  Id. at 612.  When the trial court bases its decision upon an *ore tenus* hearing, "[i]ts findings are entitled to the weight given to a jury verdict and will not be disturbed on appeal unless, upon a review of the whole record, they are plainly wrong or without evidence to support them."  Florio v. Clark, 277 Va. 566, 570 (2009).  Furthermore, "It is well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact."  Parish, 26 Va. App. at 575.

Assignments of Error 1 & 2

The trial court found that no material change in circumstances had occurred since the most recent custody award.  In mother's first two assignments of error, she argues that the trial court erred in finding that no material change in circumstances had occurred.  While the trial court noted in its October 30, 2020 opinion letter that E.G. "has emerging developmental and educational deficits," E.G. is a seven-year-old child who has had a complicated medical history.  At the time of the entry

- 7 -

of the divorce decree, the trial court found that E.G. already had significant health issues including bilateral kidney reflux disease, which made her susceptible to frequent urinary tract infections and required her parents to carefully monitor her health and administer prescribed medications. E.G. suffered early on from this condition that frequently leads to urinary tract infections, which in turn could lead to even more serious infections and potential long-term kidney scarring. Now, as before, E.G. suffers from significant health issues. Now, as before, E.G. also struggles with anxiety and sleep issues. Therefore, as before, E.G.'s parents must continue to monitor her health, continue to address her health concerns as they arise, and continue to administer her prescribed medications.

Furthermore, the tension that exists between mother and father concerning E.G.'s care is not a new development either – as is evident by the trial court's prior finding that mother's assertion that father was mother's only obstacle to co-parenting "is breathtaking." The trial court had earlier stated, "Mother's apparent lack of ability to view her own co-parenting conduct and choices as anything other than flawless, the best, perfect or exemplary in every respect provides a unique insight into Mother's thinking." The evidence supports the trial court's finding that the parental decision-making process between mother and father had not significantly changed since the parties divorced when the trial court's earlier decision on custody was made.

Mother largely asserts that father's lack of cooperation has caused a material change in circumstances because it is has negatively impacted E.G.'s healthcare and other needs. However, after hearing all the evidence and determining the credibility of the witnesses, the trial court found that neither the parental decision-making process nor "its consequences for this child [E.G.] in this family" had changed. First, father did not refuse to administer E.G.'s prescription medications. Even in instances where father had objections to a particular prescribed medication, he administered it to E.G. despite his objections. For example, father administered E.G.'s prescribed sleep medication – Clonidine – despite voicing his objections to Dr. Mulreany, and Dr. Mulreany

eventually prescribed a different medication following father's report that E.G. suffered side effects. Second, father participated in the process of creating the IEP that E.G. now has. Third, when asked at the final hearing if he ever objected to E.G.'s surgery being performed, father testified that he did not. All of this supports a finding that despite the disagreements and communication issues between the parents, father had not actually obstructed E.G.'s healthcare or access to services – and that E.G.'s needs were being met.

In addition, mother argues that the trial court's decision to grant sole decision-making authority to her related to the surgery demonstrated that the trial court had found a material change in circumstances overall, but that argument is unpersuasive. The trial court made that decision less than a week before E.G. underwent surgery, and it entered the June 10, 2020 order only one day before E.G.'s surgery. Furthermore, the order's narrow scope temporarily granted mother sole decision-making authority only "[a]s it pertains to the minor child's bilateral kidney disease, surgery, or post-surgical recovery." The trial court addressed this pressing emergency issue by creating a temporary provision "until further Order of the Court" and then set the matter for a final hearing.

In short, both before and after the entry of the final decree of divorce that established joint legal custody of the child, E.G. has had significant health issues that require her parents to monitor her health, to administer medications, and to obtain necessary treatments for her. Both before and after the entry of the final decree, E.G.'s parents have had communication struggles and co-parenting difficulties. Furthermore, despite mother's contentions, credible evidence supports a finding by the trial court that the consequences for E.G. arising from this parental decision-making process have not really changed either. For all of these reasons, we cannot say that the trial court was plainly wrong or without credible evidence in the record to support its finding of fact that no material change in circumstances had occurred.

In assignment of error three, mother asserts that "[t]he trial court erred in requiring Appellant to prove 'sufficient evidence presented of a material change in circumstances involving the parental decision-making process or its consequences for this child in this family' in order to obtain her requested relief." However, the trial court's findings reflect that the trial court did not limit its decision and considerations to issues concerning the parents and their interpersonal dynamics. The trial court acknowledged that E.G. had "emerging developmental and educational deficits" in addition to her continuing significant health issues. Furthermore, the trial court's finding in its October 30, 2020 opinion letter that there had not "been sufficient evidence presented of a material change in circumstances involving the parental decision-making process *or its consequences for this child in this family,*" (emphasis added), shows that the trial court not only assessed whether the parental decision-making process had changed, but also whether E.G.'s situation had changed as a consequence. The trial court's findings demonstrate that it considered the consequences of E.G.'s continuing health issues and "emerging developmental and educational deficits." Given that the trial court found that no material change in circumstances had occurred, under the Supreme Court's decision in Keel and its progeny, the trial court could not grant mother's request for a change in custody giving her sole legal custody. See 225 Va. at 611; Wheeler, 42 Va. App. at 289; Surles, 48 Va. App. at 171.

In assignment of error four, mother also contends that the trial court erred in holding that "any material change in circumstances" did not warrant modification of custody. However, this argument assumes as its premise something that is not correct. The trial court did not find that "any material change in circumstances" did not warrant a modification of child custody. Rather, the trial court found that there was not "sufficient evidence presented of a material change in circumstances involving the parental decision-making process or its consequences for this child in this family[.]"

When an appellant "has assigned error to a ruling that the circuit court did not make, the circuit court could not and did not err in the manner alleged by [appellant] in the assignment of error. Thus, we cannot take cognizance of the claimed error." Geouge v. Traylor, 68 Va. App. 343, 373 (2017) (citing Culpeper Reg'l Hosp. v. Jones, 64 Va. App. 207, 212 n.2 (2015)). Therefore, the trial court clearly did not err in the manner mother alleges in assignment of error four.

In assignment of error five, mother contends that the trial court erred in denying mother's motion to amend legal custody after having entered the June 10, 2020 order granting mother sole decision-making authority in certain circumstances related to the child's imminent surgery and recovery from it. However, the trial court did not find a material change in circumstances in June 2020 and did not award full legal custody to mother. In fact, everything about the trial court's actions after the June 5, 2020 emergency hearing supports the conclusion that the trial court intended to address a temporary emergency situation that had resolved itself by the time the trial court issued its October 30, 2020 opinion letter. The June hearing took place just a few days before E.G.'s surgery. Given the emergent matter of the imminent surgery and the fact that the trial court had yet to hold a final hearing on mother's motion to award her sole legal custody, the trial court's position and what it needed to address in June 2020 was markedly different than what it needed to address on December 15, 2020, when the final order was entered from which appellant now appeals. Furthermore, the trial court in June 2020 limited its actions only to the issues concerning E.G.'s bilateral kidney reflux disease, the imminent surgery for it, and the post-surgical recovery. This limitation of that June 10, 2020 order further indicates that the trial court was responding to an emergency situation surrounding surgery rather than determining that there had been a change in circumstances material to the reconsideration of the existing permanent custody award. Indeed, the June 10, 2020 order itself stated that these provisions were in effect only "until further Order of the Court" and then proceeded to set mother's motion to amend child custody for a final hearing. In

- 11 -

addition, in its October 30, 2020 opinion letter, the trial court refers to the June 10, 2020 order as "order[ing] *pendente lite* relief." This statement supports the conclusion that the trial court intended the June 10, 2020 order giving mother sole decision-making authority – as it relates to E.G.'s bilateral kidney reflux disease, surgery, and post-surgical recovery – as merely temporary. As a result, there is nothing in the record to suggest that the trial court had already earlier found a material change in circumstances sufficient to reconsider the trial court's permanent custody award which is at issue in this appeal.

For all of these reasons, we cannot say that the trial court erred in finding that no material change in circumstances had actually occurred despite its having entered the limited and temporary June 10, 2020 order primarily dealing with the child's imminent surgery.

### III.  CONCLUSION

In short, we find that the trial court was not plainly wrong or without credible evidence to find that a material change in circumstances had not occurred since the entry of the final divorce decree. Mother had the burden of proof to show that a material change in circumstances had occurred since the entry of the final divorce decree. Despite mother's numerous allegations and testimony attempting to show that father had refused to cooperate in E.G.'s care and showing that E.G. had received additional diagnoses and prescription medications, the record supports the trial court's finding that sufficient evidence had not been presented "of a material change in circumstances involving the parental decision-making process or its consequences for this child in this family[.]" E.G. does continue to have significant health issues, and her parents continue to have to monitor her health, address her needs, and administer her prescribed medications. However, credible evidence also shows that, contrary to mother's contentions, father does not refuse to administer E.G.'s medications or to consent to medical treatments for her. Finally, the trial court did not err in denying mother's motion to amend child custody because the trial court does not have

the authority to amend a custody order without finding that there has been a material change in circumstances.  For all of these reasons, we affirm the ruling of the trial court.

<u>Affirmed.</u>