COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia


MELANIE LYNN RHODES

                                                              OPINION BY
v.         Record No. 0263-16-2                    JUDGE RANDOLPH A. BEALES
                                                           NOVEMBER 8, 2016
DELMAR LANG AND SUSAN LANG


                  FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                                    Kimberly S. White, Judge

            Rick A. Friedman, II (Kimberley L. Fitzgerald; Sarah J. Conner;
            Friedman Law Firm, P.C., on brief), for appellant.

            No brief or argument for appellees or guardian *ad litem*.


       Melanie Lynn Rhodes ("mother") appeals the circuit court's January 13, 2016 final

visitation order.  The circuit court's order modified an Ohio visitation order that had previously

awarded visitation with mother's four minor children to Delmar and Susan Lang, the children's

paternal grandparents.  Mother presents two assignments of error – both of which assert that the

circuit court erred "by failing to apply Virginia's 'actual harm' standard on a motion to amend"

the paternal grandparents' visitation with the children.  For the following reasons, we affirm the

circuit court.[1]

                                    I.  BACKGROUND

       Under settled principles of appellate review, we view the evidence in the light most

favorable to the grandparents, as the party prevailing below, Chretien v. Chretien, 53 Va. App.

_____

       [1] Mother has withdrawn her third assignment of error:  "The trial Court committed
reversible error in ruling that visitation with the Appellees was in the best interest of the minor
children when there was no evidence presented that the children would benefit from visitation
with Appellees."

200, 202, 670 S.E.2d 45, 46 (2008), and we grant to the Langs "all reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). So viewed, mother married Kyle Lang ("father") on June 1, 2002. Mother and father had four children together in Ohio during the course of their marriage. Mother and father divorced on July 20, 2010. Father later died unexpectedly in a farming accident on May 20, 2011.

After the divorce but prior to their son's death, the Langs continued to have weekly contact with the children. After father's death, however, the relationship between mother and the Langs began to deteriorate. Eventually, mother sent the Langs a "No Trespass Letter" dated November 30, 2011. The letter informed the Langs that they were prohibited from entering the farmhouse property and directed the Langs not to communicate with mother in any fashion. After she sent that letter, mother prevented the Langs from having any visitation with their late son's children. The Langs eventually filed a complaint on June 11, 2012 in Ohio requesting visitation with their grandchildren.

The Langs' complaint for visitation was heard by a magistrate in Ohio. The Ohio magistrate appointed a guardian *ad litem* to represent the interests of the minor children. The guardian *ad litem* recommended that the Langs have visitation with their grandchildren. The magistrate's decision was entered as an order on June 6, 2013, and granted the Langs visitation once a month for four hours in mother's home for the first six months. After six months, the visits were to take place in the Langs' home or at a place of their choosing. The order emphasized that "the primary purpose of the visits is to reconcile the relationship between Delmar and Susan and the children." The court also stated that it "trust[ed] Melanie·to make the proper decision to facilitate reconciliation." The order specified that visitation may be increased by agreement of the parties.

- 2 -

Mother appealed the magistrate's decision to the Wayne County Court of Common Pleas. That court affirmed the magistrate's decision by an order entered on November 5, 2013. Mother then appealed that order to the Ninth District Court of Appeals in Ohio. In December 2013 – only a month after the Ohio trial court's order deciding against her and during the pendency of her appeal to the Ohio Court of Appeals, mother relocated the children to Prospect, Virginia. The Langs continued to reside in Ohio. On September 24, 2014, the Ninth District Court of Appeals in Ohio affirmed the visitation orders of the lower courts.[2]

At mother's request, the Prince Edward County Juvenile and Domestic Relations District Court ("the JDR court") registered the final Ohio visitation order. Mother then filed a motion to amend the Ohio order on January 5, 2015. Mother's motion requested the following changes: "No specific visitation provisions for the grandparents." The JDR court appointed Elizabeth Taylor Carter as guardian *ad litem* for the children. At a June 17, 2015 hearing, the JDR court awarded the Langs visitation rights with the children. Specifically, the JDR court ordered that the first scheduled visitation would take place on June 18, 2015 in Virginia. The August 27, 2015 JDR court order also awarded visitation to the Langs on or around specific holidays. Pursuant to that order, all subsequent visitations would take place in Ohio – or in any state through which the parties traveled to facilitate visitation.

Mother appealed the JDR court order to the circuit court. Prior to the final hearing in the circuit court on December 15, 2015, the parties filed memoranda of law on the issue of the proper legal standard to be applied to mother's motion to amend the previous visitation order

---

[2] The grandparents' successful legal actions in Ohio had little practical effect on their ability to see the children. During the hearing before the Circuit Court of Prince Edward County in Virginia on December 15, 2015, mother testified that, other than on a visit to Ohio in June 2015, the Langs had not seen their grandchildren since late 2012 or early 2013. Mother also testified that the children had had no communication with the Langs during that same time period, even though the Langs had tried to communicate with their grandchildren.

from Ohio. The parties all agreed that mother's relocation of the children to Virginia was a material change of circumstances. The Langs argued that the proper standard requires a showing of a material change of circumstances such that a change in visitation would be in the best interests of the children. Mother asked the circuit court to apply Virginia's "actual harm" standard, which would require the grandparents to show that the children would suffer actual harm if they were denied visitation. The circuit court agreed with the Langs and applied the material change in circumstances plus the best interests of the children standard.

Upon the conclusion of the evidence, the circuit court found that it was in the best interests of the children to have set visitation with the Langs. Referring to the unfortunate and untimely death of father, the circuit court noted how important it will be for the children to receive the "love and support of their paternal family." On December 15, 2015, the circuit court ordered visitation as set forth in the JDR order. The circuit court also found mother to be "in contempt of court for failure to abide by and comply with the Order of the Prince Edward Juvenile and Domestic Relations Court dated August 27, 2015." The basis of the contempt was mother's repeated efforts to prevent the grandparents from exercising their visitation rights, noting that mother "chose to simply ignore" the Langs' attempts to set up visitation. The circuit court found that mother had demonstrated an "unwillingness to cooperate in any way, shape or form to comply" with prior court orders. Despite stating that the circuit court did not have "any confidence that [mother was] going to comply with any of these orders," the court suspended any sanctions for her contempt pending a hearing on January 13, 2016 to determine if mother had purged herself of the contempt. Finally, the circuit court ordered mother to pay $1,178 in attorney fees and costs to the Langs.

By order entered January 27, 2016, mother was found to be in contempt of the circuit court's prior orders. Based on that finding of contempt, the circuit court ordered mother to report

to Piedmont Regional Jail on March 25, 2016. The order stated that mother "may purge the contempt and not be required to report to jail by engaging in the ordered counseling, and fully encouraging and ensuring the minor children engage in the ordered counseling." The record contains no evidence of any further proceedings in the circuit court.

## II. ANALYSIS

### A. STANDARD OF REVIEW

On appeal, mother's assignments of error challenge the legal standard the circuit court applied to her petition to modify visitation. The circuit court's conclusions as to questions of law are subject to *de novo* review. Rusty's Welding Serv. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

### B. PETITION TO MODIFY VISITATION

Mother first asserts that the circuit court "committed reversible error by failing to apply Virginia's 'actual harm' standard on a motion to amend" the parental grandparents' visitation with the children. She also contends that the failure to apply the "actual harm" standard "violated Appellant/Mother's constitutionally protected parental rights." [3]

As the United States Supreme Court has observed, the "liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children – is perhaps the

---

[3] We note that neither party has contested the jurisdiction of Virginia courts to modify the Ohio visitation order, either in this Court or below. Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), as adopted in the Code of Virginia, a court of the Commonwealth may modify a child custody or visitation determination made by a court of another state if two conditions are met. First, modification is proper if the "Commonwealth is the home state of the child on the date of the commencement of the proceeding." See Code § 20-146.12(A)(1). Second, Virginia courts can only modify the order of the other state if "[a] court of the Commonwealth determines that neither a parent of the child, nor the child presently resides in the other state." See Code § 20-146.14(2). Based on this statutory authority, Virginia courts have jurisdiction to modify the Ohio visitation order in this case because the minor children have resided in Virginia since December 2013 and neither parent now resides in Ohio.

oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000). "The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. In order to protect those rights, mother is correct that Virginia courts have found that "in a dispute between a fit parent and a non-parent . . . the best-interests test should be applied only if the trial court first finds 'an actual harm to the child's health or welfare without such visitation.'" Griffin v. Griffin, 41 Va. App. 77, 83, 581 S.E.2d 899, 902 (2003) (quoting Williams v. Williams, 256 Va. 19, 22, 501 S.E.2d 417, 418 (1998)).

The analysis, however, does not end there because this appeal, unlike the appeals in Griffin or Troxel, concerns mother's *petition to amend* an existing visitation order – not an initial determination of the parties' visitation rights with the children. "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). When a party has filed a petition to modify an existing visitation order, the courts must apply the Supreme Court's two-pronged test enunciated in Keel v. Keel, 225 Va. 606, 303 S.E.2d 917 (1983), to determine whether modification of that order is proper. That test asks, "first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." Keel, 225 Va. at 611, 303 S.E.2d at 921.

In Albert v. Ramirez, 45 Va. App. 799, 613 S.E.2d 865 (2005), this Court reviewed "questions as to who has and what is the appropriate burden of proof in a dispute between a parent and a stepparent on a petition to modify or terminate a prior final custody and visitation decree." Id. at 802, 613 S.E.2d at 866. More specifically, the exact issue before this Court was

> whether the trial court, in addressing a change of custody and
> visitation petition between the biological mother and the
> stepfather, must apply the presumption as defined in Troxel v.
> Granville, 530 U.S. 57, 65 (2000), favoring the natural parent over

a third-party or stepparent, or if the existence of a prior final decree of a court of competent jurisdiction requires that the court apply the "material change in circumstance and best interest of the child" standard in modifying the prior order.

Id. at 802-03, 613 S.E.2d at 866. This Court reversed the circuit court and held that "the circuit court improperly applied the 'actual harm' analysis" because the matter did not involve an initial determination of custody and visitation with the stepparent. Id. at 802, 613 S.E.2d at 870.

In Albert, the husband appealed the circuit court's termination of his custody and visitation rights with his stepdaughter. The husband's wife was the child's biological mother, but the child's biological father had died prior to the child's date of birth. The husband and wife married when the child was three years old. The husband and the child had a close relationship during the marriage. Id. at 803, 613 S.E.2d at 867. After the parties separated, the juvenile and domestic relations district court entered a consent decree that granted the parties joint legal and physical custody of the child. Id. Two years after the entry of the juvenile court order, the wife filed a petition to modify custody, visitation, and support. When the matter came before the circuit court, the court applied the "actual harm" standard articulated in Griffin v. Griffin, 41 Va. App. 77, 581 S.E.2d 899 (2003). Pursuant to that test, the circuit court found that the husband failed to show by clear and convincing evidence that the child would be actually harmed by the denial of the husband's request for custody and visitation. The court awarded sole custody to the wife and awarded no visitation to the husband. Id. at 804, 613 S.E.2d at 867.

This Court reversed the circuit court and held that "in cases *involving the modification of an existing valid custody order*, the party seeking the modification bears the burden of proving that a material change of circumstances has occurred since the entry of the initial order and that a change in custody would be in the best interests of the child." Id. at 806-07, 613 S.E.2d at 868 (emphasis added). This Court distinguished the Supreme Court's decision in Troxel and its own decision in Griffin by noting that those cases involved an initial custody determination, whereas

- 7 -

Albert involved the modification of a "judicially sanctioned, existing custody decision."  Id. at

807, 613 S.E.2d at 868.  This Court noted that the existing custody decision in Albert was "final

and binding upon the parties and other courts and resolved the issues of custody and visitation

with the child, subject, of course, to any material change of circumstance which would justify a

court modifying the prior holding."  Id. at 807, 613 S.E.2d at 869.  Accordingly, this Court held

in Albert that the circuit court erred as a matter of law when it "improperly applied the 'actual

harm' analysis to this modification case" and remanded the case to the circuit court "to apply the

proper standard for modification of a custody and visitation decree."  Id. at 809, 613 S.E.2d at

870.[4]

Our decision in Albert is highly persuasive with regard to the outcome of this case.  Both

Albert and this case involve a parent's petition to modify *an existing custody or visitation order*.

In both instances, the original order that they sought to modify awarded custody or visitation

rights to a grandparent or stepparent.  In both cases, no party questioned the fact that the original

custody and visitation orders were final, valid, and enforceable.  The lone distinguishing fact

here is that the prior visitation order in this matter was entered in Ohio, instead of Virginia.

However, mother does not dispute the fact that the Ohio visitation order was the product of a

---

[4] While the *initial* custody and visitation determination in Albert was a "judicially sanctioned consent decree," this Court's decision in that case certainly did not simply rely on the existence of a consent decree.  This Court also concluded,

> By placing the burdens of proof and of going forward with the
> evidence upon husband to demonstrate that "actual harm" to the
> child would result by his not being granted custody or visitation
> rights, the [circuit] court placed the burdens of proof and
> production of evidence on the wrong party and applied an incorrect
> standard.

Id. at 808, 613 S.E.2d at 869.  Likewise, in this case, mother's request for application of the "actual harm" standard to *her petition to modify the existing visitation order* in this matter would also improperly place the burdens of proof and production of evidence on the grandparents, even though they had previously been awarded visitation with their grandchildren.

court of competent jurisdiction. In addition, the record in this case indicates that mother's direct appeal of the Ohio visitation order was unsuccessful. Accordingly, the Ohio visitation order was final and binding upon both the parties, as it conclusively resolved the issue of the Langs' visitation rights with the children.

Because of the existence of a final, valid, and enforceable order establishing the visitation rights of the parties, the circuit court was required by our decision in Albert to apply the material change of circumstances and best interests analysis. In short, in Virginia, when a party seeks to *modify an existing visitation order*, that party must demonstrate that (1) there has been a material change of circumstances since the entry of the previous visitation order and (2) that a change in visitation would be in the best interests of the children. In this instance, the parties all agreed that mother's relocation of the children from Ohio to Virginia was a material change in circumstances. Therefore, given the relevant case law, the *only* issue remaining before the circuit court was whether *modification* of the visitation as set forth by the *existing* Ohio visitation order was in the best interests of the children.[5] Consequently, we reject mother's contention that the circuit court committed reversible error by failing to apply the "actual harm" standard on a motion to *amend* the grandparents' visitation with the children.

Mother's argument also raises significant concerns regarding forum shopping. The Ohio visitation order awarded the grandparents specific visitation rights. Pursuant to Code § 20-146.14, Virginia courts only have the authority to *modify* the Ohio visitation order. In this

---

[5] As the Supreme Court stated in Keel, the best interests of the children prong "is clearly the most important part of the two-part test. It underscores the importance we place upon securing the best interests of children whose interests, in the final analysis, must be protected by the courts." Keel, 225 Va. at 612, 303 S.E.2d at 921. By focusing on the children's best interests when determining whether to allow a change in visitation, the courts can protect children and can promote a child's interest in stability, particularly after traumatic events like divorce or the death of a parent.

matter, mother's motion to amend the Ohio order requested the following major changes to visitation: "No specific visitation provisions for the grandparents." In light of that specific request, essentially to eliminate the grandparents' visitation with the children, mother's history of preventing the Langs from exercising their visitation rights, and the fact that mother moved the children to Virginia while the Ohio matter was still pending on appeal, mother's request that this Court apply the "actual harm" standard in this matter appears to be an attempt to use the laws of Virginia to invalidate the final Ohio visitation order. We cannot endorse such an approach as the adoption of mother's legal position would encourage and incentivize forum shopping by parents who are disappointed by a custody and visitation determination within their own original jurisdiction.

Finally, mother argues in her second assignment of error that the circuit court violated her "constitutionally protected parental rights by failing to apply the 'actual harm' standard" on her motion to amend the Ohio visitation order. This specific issue was also addressed by this Court's decision in Albert. This Court specifically found, "Requiring the party seeking a modification of a valid custody or visitation decree to prove a material change of circumstances justifying the modification *is not inconsistent with or anathema to a parent's constitutional rights as enunciated in Troxel*." Albert, 45 Va. App. at 809, 613 S.E.2d at 870 (emphasis added). Thus, this Court has previously determined that the application of the material change in circumstances and the best interest of the children standard on a motion to amend a prior visitation order does not infringe upon the a party's constitutionally protected parental rights. Therefore, we find that mother's second assignment of error is also without merit.[6]

_____

[6] Even though father has been deceased since May 2011, both of mother's assignments of error now before this Court contend that the "actual harm" standard should be applied where "neither biological parent supports the third party visitation." We find that such a statement is certainly inappropriate and quite disingenuous, under these circumstances, where, as here, the other biological parent has actually predeceased any court order for visitation with the

III. CONCLUSION

For the foregoing reasons, we find that the circuit court did not err when it applied the material change in circumstances plus the best interests of the children standard to mother's motion to amend the final Ohio court order granting the Langs visitation with their grandchildren. We also find that the application of that legal standard did not violate mother's constitutionally protected parental rights. Consequently, we hold that the circuit court did not err when it ordered that the Langs continue to have visitation with their grandchildren, as originally ordered by the Ohio courts. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

---

grandparents. In addition, there is clearly nothing in the record to support a conclusion that father would not support his own parents' efforts to have visitation with his children.