COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Clements

<div style="writing-mode: vertical">UNPUBLISHED</div>

ALDINE DOVE, SR.

v.      Record No. 0226-19-3

HERBERT PROPST AND
  KAREN SUE PROPST

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 3, 2019

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(Lynn Svonavec, on brief), for appellant. Appellant submitting on
brief.

No brief for appellees.

(Lisa Knight, on brief), Guardian *ad litem* for the minor child.
Guardian *ad litem* for the minor child submitting on brief.


Aldine Dove, Sr. (father) appeals a circuit court order awarding custody of his minor child

to Herbert and Karen Propst (the maternal grandparents). Father argues that the circuit court erred

in awarding legal and physical custody of the minor child to the maternal grandparents because the

child's "previous placement with them had failed." Upon reviewing the record and briefs of the

parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the

circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"Under settled principles of appellate review, we view the evidence in the light most favorable to the [maternal] grandparents, as the party prevailing below, and we grant to the [maternal grandparents] all reasonable inferences fairly deducible therefrom." Rhodes v. Lang, 66 Va. App. 702, 704 (2016) (internal citations and quotations omitted).

Father and Amy Propst (mother) have one child, who was born in 2004. The child had lived with the maternal grandparents "on and off" for approximately twelve out of his fourteen years. In November 2014, the Harrisonburg-Rockingham Juvenile and Domestic Relations District Court (the JDR court) entered a protective order prohibiting father from having contact with the child. The JDR court also ordered that the child reside with the maternal grandparents.

The child had been diagnosed with Asperger's Syndrome and Social (Pragmatic) Communication Disorder. He had a history of reacting "strongly to efforts to restrict or modify his behavior," and had yelled, pushed his grandmother, thrown things at her, and punched holes in the walls. In September 2015, the Harrisonburg Rockingham Social Services District (the Department) became involved with the family, and the child was sent to a residential program. In July 2016, the child was released from the residential program because "it was no longer beneficial to him." Mother filed for custody of the child, and in December 2016, the JDR court awarded custody of the child to mother.

Mother had been diagnosed with "several mental health conditions" and was an alcoholic. Mother complied with her prescribed medication, but continued to drink beer.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Mother's condition deteriorated, so the Department and the child asked if he could live with the maternal grandparents again. The maternal grandparents agreed, so in September 2017, the child moved back into their home.

In May 2018, the maternal grandparents filed a motion to amend custody, which mother supported. On August 17, 2018, the JDR court awarded legal and physical custody of the child to the maternal grandparents. Father appealed the JDR court's ruling.

On October 25 and November 19, 2018, the parties appeared before the circuit court.[2] The maternal grandmother testified that she was seventy-three years old and that she and her husband have lived in the same three-bedroom, one-bath home for fifty years.[3] The maternal grandmother explained that the child had his own bedroom. She reported that he had been living with them "on and off since he was about four months old."

The child had a history of mental illness and not getting along with people. The maternal grandmother explained that the child did not like change and reacted negatively to it. She had found that there were days when "he just doesn't want to do anything that you ask him to do" and that it was better to leave him alone on those days. However, since the child had returned from the residential program, his temper and anger had lessened, and his behavior improved. The maternal grandmother testified that she and the child "get along very well most of the time." The child attended eighth grade at the Minnick Center for Alternative Education and was reportedly "doing really great."

---

[2] Father was incarcerated at Greensville Correctional Center and appeared via video conference, while his guardian *ad litem* was present in the courtroom. The other parties, the maternal grandparents, the mother, and the guardian *ad litem* for the minor child, were present in the courtroom. On the first day, the circuit court stopped hearing testimony and continued the matter after the correctional officers informed father that he had to stop the video conference due to an institutional matter. The hearing was reconvened approximately three weeks later.

[3] One of the bedrooms was converted to a laundry room.

At the time of the hearing, mother had been living with the maternal grandparents for several months because mother's apartment flooded and was not habitable. Mother reportedly had secured an apartment the day before the hearing.

The maternal grandmother testified that the child had had very little contact with father's family. She estimated that the child had not seen or spoken with his uncle, Derek Dove, in five or six years.

Dove testified that father had asked him to be available to take custody of the child after the child entered the residential program, and Dove agreed. In approximately September 2018, Dove filed a motion for custody in the JDR court because father had asked Dove to do so.[4] Although Dove knew where the maternal grandparents lived, he had never contacted them or asked about the child. Dove was aware that the child had "some violent tendencies," but did not know any specific details because he did not "meddle" in other people's business. Dove had not seen the child in years.

Father testified that he objected to the maternal grandparents having custody of the child because he was worried about the child's behavior, the child's exposure to the mother's drinking, the maternal grandparents' ages, and their ability to handle the child. Father wanted the child to be in Dove's or the Department's care.

Mother testified that she supported the maternal grandparents' motion for custody and believed that they could control the child and his behaviors. Mother reported that she regularly took her medication. She explained that when the child came back to her care after he completed the residential program, she worked with the counselors and doctors in getting him the right medication. She acknowledged that the child was "kind of ornery" and that she had had trouble getting him to school on time. Mother also stated that she never consumed any alcohol or drugs

_____

[4] Dove's motion was pending in the JDR court at the time of the circuit court hearing.

while the child lived with her. She "started slipping" after he moved in with the maternal grandparents. She admitted that she drank beer, but described herself as a "functioning alcoholic" because she did not get intoxicated from beer.

After hearing all of the evidence and arguments, the circuit court spoke with the child *in camera*.[5] The child told the judge that he wanted to live with the maternal grandparents. On December 13, 2018, the circuit court issued its letter opinion. The circuit court noted that the only motion before the court was the one filed by the maternal grandparents and that mother supported their motion. The circuit court reviewed the Code § 20-124.3 factors in depth and held that awarding custody to the maternal grandparents was in the child's best interests. The circuit court entered the final order on February 4, 2019. This appeal followed.

ANALYSIS

Father argues that the circuit court erred in finding that it was in the child's best interests to transfer custody to the maternal grandparents because the child's "previous placement with them had failed." Father emphasizes that the child was violent when he previously lived with the maternal grandparents. The child was sent to the residential program and then returned to mother's custody. When that living situation deteriorated, the child went to live with the maternal grandparents. Father questions the maternal grandparents' ability to care for the child and his behavior.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Rhodes, 66 Va. App. at 708-09 (quoting Farley v. Farley, 9 Va. App. 326, 327-28 (1990)). "[T]here is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." D'Ambrosio v. D'Ambrosio, 45 Va. App.

_____

[5] The child's guardian *ad litem* and the court reporter were present.

- 5 -

323, 335 (2005). "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Khalid-Schieber v. Hussain, 70 Va. App. 219, 228 (2019) (quoting Farley, 9 Va. App. at 328). "A trial court's determination of a child's best interests 'is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it.'" Rubino v. Rubino, 64 Va. App. 256, 261-62 (2015) (quoting Farley, 9 Va. App. at 328); see also Khalid-Schieber, 70 Va. App. at 228. In determining the best interests of the child, the trial court is required to consider the factors enumerated in Code § 20-124.3.

Here, the only matter before the court was the maternal grandparents' motion to modify custody.[6] Neither parent sought custody of the child. Mother supported the maternal grandparents' motion. Father argued that Dove or the Department should have custody of the child.

The circuit court reviewed each of the Code § 20-124.3 factors in depth in its letter opinion, which was incorporated into the final order. The circuit court found that the child had been in the maternal grandparents' custody for most of his life. The circuit court recognized that the child had special needs, but found that he was "currently doing better than he has ever done." The circuit court held that the maternal grandmother was "especially attuned to [the child's] needs and [was] aware of his mental health history." She had been the child's primary caregiver

---

[6] This Court has held that "[i]n determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child." Khalid-Schieber, 70 Va. App. at 228 (quoting Parish v. Spaulding, 26 Va. App. 566, 570-71 (1998)); see also Rhodes, 66 Va. App. at 711. It is not apparent from the record whether the circuit court applied this test and found that there was a material change of circumstances; however, none of the parties objected and it appears from the record that there had been a material change in circumstances since the most recent custody order. Therefore, we will focus our review of the circuit court's ruling on the best interests of the child, as the circuit court and the parties did.

"since his infancy" and had been "at the forefront of [his] recent improvement." The maternal grandmother had been "the most consistent and productive influence" in the child's life, and he did best in her care.

The circuit court acknowledged father's concerns about the maternal grandparents' ability to care for the child, as they and he grow older. The circuit court admonished the maternal grandparents to "be more assertive" about limiting the child's access to the internet and video games. When the circuit court awarded custody to the maternal grandparents, it implemented several conditions, including a limit on the number of hours that the child played video games or accessed the internet. The circuit court warned the child that he had to "listen to his grandparents without exploding into fits or outbursts." The circuit court also held that the child was "old enough to understand that his elderly grandparents' continued custody of him [was] dependent upon the court being satisfied that they can maintain control of the circumstances of his upbringing." If the child did not follow the court's or the maternal grandparents' requirements, or if he created a "hostile assaultive environment," the court would consider it a material change of circumstances and revisit who should have custody. The circuit court asked the guardian *ad litem* to review the court's order with the child, so he understood what was expected of him.

Furthermore, the circuit court held that father had "a very limited relationship" with the child and that Dove had "absolutely no relationship" with the child. Father had never had custody of the child and was frequently absent from the child's life. In 2014, father had abused the child, so a protective order prohibited contact between them. The circuit court found that the child reacted "strongly – almost viscerally – at the notion of being placed in [Dove's] home." Dove had not had any contact with the child in years and had no knowledge of the child's needs.

In addition, the circuit court found that father was "patently incorrect" in thinking that foster care would be a better option for the child than living with the maternal grandparents.

The record reflected that the child did best in a stable environment and reacted poorly to change. As noted, the circuit court found that the maternal grandparents had had custody of the child for most of his life; thus, they were a source of stability for the child. Placing the child in an unfamiliar environment would not have been beneficial to the child. Considering the totality of the circumstances, the circuit court did not abuse its discretion in finding that it was in the child's best interests to award custody to the maternal grandparents.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>