COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, White and Frucci

MISTY L. GARRETT

                                                            MEMORANDUM OPINION*
v.        Record No. 1276-23-3                              PER CURIAM
                                                            SEPTEMBER 24, 2024
WILLIAM F. HANNA


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(Bruce H. Russell, II; Bruce H. Russell II, P.C., on briefs), for
appellant.

(Stephanie A. Pease; Stephanie M. Kern, Guardian ad litem for the
minor child; Stephanie A. Pease, PLLC; Stephanie M. Kern, Law
Office P.C., on brief), for appellee.


Misty Garrett ("mother") appeals from the June 23, 2023 order of the Circuit Court of

Washington County ("circuit court") modifying the existing custody order by awarding William

Hanna ("father") physical custody of their minor child, A.H. On appeal, mother assigns error to

the decision, contending that the circuit court "misapplied the standard" when it determined that

there had been a material change in circumstance warranting a change in custody. Mother further

contends that the circuit court erred: 1) by striking the wrong balance in assessing what custody

arrangement "was in child's best interest" and 2) by failing to assign the appropriate weight to the

child's progress while in mother's care. Finally, mother asserts that the evidence was insufficient in

support of the circuit court concluding: 1) that she placed undue influence on the child and 2) that

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

she interfered with the child's relationship with father.  For the following reasons, we affirm the circuit court's judgment.[1]

## I. BACKGROUND[2]

A.H.[3] was born in 2011, while mother and father were married.  Mother and father divorced while living in Colorado.  In 2017, a Colorado state court awarded primary physical custody of A.H to mother with joint legal custody being shared by both parents.  Father also received an ongoing right to visitation with his daughter.

Mother subsequently moved to Abingdon, Virginia, and father currently resides in Florida.  In late 2022, mother moved to modify father's visitation in the Washington County Juvenile and Domestic Relations District Court (the "JDR court").  In response, father moved to amend the physical custody of A.H., contending that A.H.'s emotional and mental health had deteriorated while in mother's care.  Father also alleged that mother had interfered with his relationship with A.H.  Following a hearing, the JDR court granted father primary physical custody, visitation rights to mother, and both parties retained joint legal custody of A.H.  Mother filed a de novo appeal to the circuit court.

On March 22, 2023, the circuit court conducted an *ore tenus* hearing wherein Audrey Bierbaum ("Bierbaum"), a licensed clinical social worker, testified consistent with the father's

---

[1] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

[2] "We view the evidence, and reasonable inferences fairly deducible therefrom, in the light most favorable to father, the prevailing party before the trial court."  *Rainey v. Rainey*, 74 Va. App. 359, 368 n.1 (2022).  The record in this case was sealed.  We unseal only the information contained in this opinion as necessary to address the issues the parties have raised.  The rest of the record remains sealed.  *See Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022).

[3] We use initials to refer to the minor child to preserve her privacy.

allegations. Bierbaum testified that she had counseled A.H. over the course of 74 sessions and while in her care, she diagnosed A.H. with Adjustment Disorder with Mixed Anxiety and Depression and Generalized Anxiety Disorder. Bierbaum further testified that A.H. was generally nervous and anxious and that her symptoms increased in intensity when visits with father were approaching. Bierbaum also testified that "[A.H.] occasionally expressed concern about her mother's opinion regarding her responses."

Bierbaum further noted that during one session, in response to her question, A.H. stated that she did not know what to say and needed to ask her mother. During another session, A.H. stated she had fun with her father but "indicated she did not believe her father was following the court order." Bierbaum further testified based on her interactions with A.H. that she informed mother and father that the custody order was "something which [A.H.] should know nothing about." After this conversation, Bierbaum testified that she received an email from A.H.'s email account indicating that A.H. did not wish to continue counseling sessions. Bierbaum reported additional concerns she had about A.H.'s "anxiety and stress related to feeling pulled in the direction of pleasing others, or being lead [sic] to believe things regarding her father and her relationship with him that were not pure to her own perspective."

Father testified that he had received "pushback" from mother regarding his visitations with A.H. On occasions, mother informed him that in the days just before visits with his daughter, A.H. became anxious and physically ill, vomiting and developing hives. He also advised that after the JDR court awarded him custody, A.H. moved to Florida to be with him and was "upbeat and happy." Father also testified that A.H. had not exhibited any physical illness in Florida, except once after she spoke to mother. While living in Florida, father noted that A.H. participated in a number of activities. On cross-examination, father acknowledged that A.H. had been "making straight A's

in Virginia and [that] her grades had dropped in Florida." He also acknowledged that he had not consulted with mother before A.H. received an HPV vaccine.

Leslie Ann Brittany ("Brittany"), father's fiancée, testified that A.H. had adjusted well to living with her father in Florida. According to Brittany, "[A.H.] was healthy, did not seem to vomit, [or] have diarrhea, did not have any panic attacks or suicidal ideations and had a good relationship with the other child in the home."

A.H.'s guardian ad litem ("GAL") reported to the circuit court that the child indicated that she preferred to live with mother. After speaking with the child's teachers, the GAL found that the child was intelligent, but that she was sometimes "emotional when having to separate from her mother at the beginning of the school day." The GAL's report noted A.H.'s "emotional fluctuations between the parents." The GAL also reported that mother and father disagreed about the cause of A.H.'s emotional fluctuations, as well as to how to alleviate the child's distress.

In a subsequent report, the GAL noted that "[A.H.]'s responses regarding her father [were] inconsistent with her behavior." When preparing to see father, A.H. acted "mournful" in mother's presence; but when interacting with father outside of mother's presence, A.H. appeared happy. From these observations, the GAL expressed "grave concern for retaliation by [mother], undermining of [A.H.]'s joy manifested in her father's care." The GAL "maintain[ed] that the mother's control over [A.H.] [was] not only creating anxiety, but affecting any meaningful relationship the father is having with [A.H.]." The GAL further noted concerns about A.H. being under mother's influence until mother obtained mental health evaluations and treatment for her possessive behavior. [4] Finally, the GAL concluded that the child was healthiest while with father in Florida.

---

[4] The GAL also submitted a report on December 27, 2022, asserting that mother had "a troubling obsession with her identity as the devoted mother of a special needs child." The circuit

Mother then testified that A.H. participated in many events at school and in the community while living in Virginia. Mother further testified that A.H. did not have extended family members or siblings residing in Virginia but that she did have close family members who live in Florida approximately six hours from father's residence. Mother testified that other than liking Virginia, she has no significant ties to the state and advised the circuit court that she would relocate to Florida if A.H. continued to live there.

Mother was also questioned[5] about testimony she had given in the JDR court hearing describing instances in Colorado, prior to the custody order, where mother slept in the nude with A.H. until the child was approximately seven years old. Mother was also questioned concerning showering with A.H. and whether she "trimm[ed] [A.H.]'s pubic hair allegedly upon the child's request." Mother denied any wrongdoing when it came to the care of A.H., and no further evidence in support of these allegations was introduced.

Based on the evidence adduced at the hearing, the circuit court first found that the "evidence" in the record "support[ed] a change in circumstance[s]" since the Colorado court had entered the 2017 custody order. In making this determination, the circuit court specifically noted a GAL report that "provide[d] a great deal of information from [the] Colorado [proceedings], which information would have been taken into consideration prior to the entry of the Colorado order and the order allowing the mother to relocate to the Commonwealth of Virginia." It also reviewed the most recent GAL report, which had pointed out that A.H.'s "responses regarding her father are inconsistent with her behavior" and "maintain[ed] that the mother's control over the child is not only creating anxiety, but affecting any meaningful relationship the father is having with [A.H.]."

court found that this report raised "troubling issues," but that the evidence did not support the report's conclusions.

[5] The record is unclear whether such questioning occurred on direct examination, cross-examination, or by the court sua sponte.

- 5 -

As a result of finding a material change in circumstance, the circuit court then considered the Code § 20-124.3 factors to consider what was in the best interests of A.H. concerning her custody and visitation. In doing so, the circuit court noted that A.H. appeared to be academically gifted and discussed A.H.'s mental health as her counselor had outlined. The circuit court next found that father appeared to be able to meet A.H.'s emotional, intellectual, and physical needs, while mother's behavior appeared to have a negative effect on her emotionally and physically. The circuit court also concluded that mother had previously exercised "total control" over A.H., while father appeared willing to include mother in A.H.'s care and upbringing. The circuit court also "referenced" Bierbaum's report in making a finding on "family abuse . . . or sexual abuse."[6]

Citing mother's behavior, the circuit court also found that she did not appear to support A.H.'s relationship with father, while father appeared willing to support A.H.'s relationship with mother. The circuit court acknowledged that both parents appeared to want a close relationship with A.H. but reiterated that father seemed "to be willing to cooperate with the mother to resolve matters regarding [A.H.] and the mother ha[d] not been willing to include the father in [A.H.]'s upbringing." The circuit court also acknowledged that A.H. indicated to the GAL that she preferred to live with mother, but the circuit court was "concerned with giving great weight to this preference due to the influence of the mother on the child."

On June 23, 2023, the circuit court entered a final order awarding joint legal custody to both parents, with primary physical custody to father and visitation for mother. Mother appealed.

---

[6] The record is unclear whether this finding was of family abuse, sexual abuse, or both, and on what portion of the report the circuit court relied on.

## II. ANALYSIS

A. *Standard of Review*

Our analysis begins with "the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 228 (2019) (alteration in original) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Wynncky*, 71 Va. App. 193 (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)). And "[w]e review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022). "[T]he phrase 'abuse of discretion' means that the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Thus, "'[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred.'"" *Id.* (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[W]e review the trial court's statutory interpretations and legal conclusions de novo." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Navas v. Navas*, 43 Va. App. 484, 487 (2004)).

In addition, "[o]n appeal, we do not reweigh the [best interest of the child] factors to see if we would have reached a different conclusion." *Wynnycky*, 71 Va. App. at 201. Accordingly, "unless the court fails to consider the required statutory factors or applies an incorrect legal standard, [its] decision as to whether a change in custody [or visitation] would be in the best

interests of the child is reversible . . . only if 'plainly wrong or without evidence to support it.'" *Surles v. Mayer*, 48 Va. App. 146, 172 (2006) (quoting *Yopp v. Hodges*, 43 Va. App. 427, 439 (2004)).

B. *Father showed that a material change in circumstances occurred.*

Mother contends that father failed to prove that a material change in circumstances had occurred. We disagree.

"When a party has filed a petition to modify an existing visitation order, the courts must apply the Supreme Court's two-pronged test enunciated in *Keel v. Keel*, 225 Va. 606 (1983), to determine whether modification of that order is proper." *Rhodes v. Lang*, 66 Va. App. 702, 709 (2016). "That test asks, 'first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children.'" *Id.* (quoting *Keel*, 225 Va. at 611). As "there can be no change in custody unless such change will be in the best interests of the children . . . [t]he second prong, then, is clearly the most important part of the two-part test." *Visikides v. Derr*, 3 Va. App. 69, 71 (1986) (quoting *Keel*, 225 Va. at 612).

"'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments" in a child's life. *Sullivan v. Jones*, 42 Va. App. 794, 806 (2004) (quoting *Parish v. Spaulding*, 26 Va. App. 566, 573 (1998)). To wit, "[a] change in circumstances may take the form of a negative change with regard to the custodial parent's ability to care for the child, but '[i]t is also pertinent whether there has been a positive change in the circumstances surrounding the noncustodial parent." *Visikides*, 3 Va. App. at 71 (quoting *Keel*, 225 Va. at 610).

Here, father alleges that the decline in A.H.'s mental and emotional state, as well as mother's interference with father's relationship with A.H. constituted a change in circumstances. Since the 2017 Colorado custody order, A.H. had begun counseling and been diagnosed with

- 8 -

"Adjustment Disorder with Mixed Anxiety and Depression" and "Generalized Anxiety Disorder." Over the course of several counseling sessions, A.H.'s treatment provider expressed concern about mother's influence over A.H.

Furthermore, the circuit court also heard evidence about the parties' interactions with A.H. This included father's testimony that he received "pushback" from mother regarding his visitations with A.H. and that A.H. became ill before visits with father, but that she appeared happy and physically healthy while in his care. And, since the 2017 custody order, father had become engaged and had moved to Florida. Hence, as the record contains credible evidence supporting the circuit court's finding that a material change in circumstances had occurred, we will not disturb that finding. *See*, *e.g.*, *Surles*, 48 Va. App. at 174 (noting that "the relocation of [a] custodial parent constitutes a material change of circumstances" for custody modification purposes (alteration in original) (quoting *Hughes v. Gentry*, 18 Va. App. 318, 322 (1994))).

C. *The circuit court did not abuse its discretion in concluding that father established his burden that a change of custody was in A.H.'s best interest.*

Mother also contends that the circuit court abused its discretion in holding that father met his burden of demonstrating that a change of custody was in A.H.'s best interest. We disagree.

Code § 20-124.3 includes a list of factors that a trial court "shall consider" when determining the "best interests of a child" for purposes of custody and visitation. *Armstrong v. Armstrong*, 71 Va. App. 97, 104 (2019) (quoting Code § 20-124.3). Relevant to this appeal, those factors include:

> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual, and physical needs of the child;
>
>  . . . .
>
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;

6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;

7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;

8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age, and experience to express such a preference;

9. Any history of . . . (ii) sexual abuse; . . . that occurred no earlier than 10 years prior to the date a petition is filed.[7]

Code § 20-124.3. The circuit court has discretion regarding how to weigh the factors "and 'is not "required to quantify or elaborate exactly what weight or consideration it has given to each."'" *Wynnycky*, 71 Va. App. at 201 (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)).

Here, the circuit court provided a detailed explanation, based on its evaluation of the statutory factors, for its determination that A.H.'s best interests were served by awarding father primary physical custody. Indeed, mother does not dispute that the circuit court performed the required statutory analysis; mother merely challenges the results. In particular, mother challenges the circuit court's conclusions under factors three, five, six, seven, and eight of Code § 20-124.3. We find none of her challenges availing.

For example, with respect to Code § 20-124.3(3), the relationship existing between the parents and A.H., the circuit court concluded that father was able to meet A.H.'s emotional, intellectual, and physical needs and that "mother's behavior [was] affecting [A.H.]'s emotional and physical needs." Mother simply contends that the evidence does not support that conclusion

---

[7] If the court finds such a history or act, the court may disregard the factors in subdivision 6. Code § 20-124.3(9). Here, the circuit court noted a finding for both factors 6 and 9.

and the circuit court erred in finding that mother unduly influenced A.H. However, A.H.'s demeanor changed in mother's presence, and A.H. was also anxious about mother's opinion on her statements during therapy sessions. This evidence demonstrated mother's influence over A.H. Likewise, mother reported that A.H. was physically ill immediately before visits with father, but father's fiancée reported that the child was physically healthy while in their care. Thus, the record on appeal supports the circuit court's findings.

In evaluating the statutory factors contained within Code § 20-124.3(5)-(7), the role that the parents play in A.H's life now and in the future, in the upbringing and care of the child, their propensity to actively support A.H.'s contact and relationship with the other parent, and their relative willingness and demonstrated ability to maintain a close and continuing relationship with A.H., the circuit court took issue with mother's conduct. For example. the circuit court determined that mother had "total control" over A.H., to the exclusion of father, and that she tried to interfere with father's relationship with A.H. The circuit court also noted that father was willing to include mother in A.H.'s upbringing and supported A.H.'s relationship with mother. The circuit court also found that "father appear[ed] to be willing to cooperate with mother to resolve matters regarding [A.H.]" but that mother had been unwilling "to include the father in [A.H.]'s upbringing."

Again, the record on appeal supports the circuit court's conclusions. Father testified that he had received "pushback" from mother regarding visitation since A.H.'s birth. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Khalid-Schieber*, 70 Va. App. at 234 (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). Here, the circuit court was entitled to give greater weight to father's testimony. Moreover, father's testimony was supported by the GAL's opinion that "mother's control over

[A.H.] is not only creating anxiety, but affecting any meaningful relationship the father is having with the child." Similarly, the record reflects that A.H. seemed "mournful" in mother's presence before visits with father, but "joyful" during the actual visitations. The circuit court is permitted to conclude from such a significant change in demeanor that mother was baiting these responses to undermine A.H.'s positive relationship with father.

Regarding the statutory factors contained within Code § 20-124.3(8), A.H.'s reasonable preference, the circuit court acknowledged that A.H. indicated that she preferred to live with mother, but the court decided to assign little weight to that preference because mother exerted such influence over her. As discussed above, the circuit court considered evidence of the changes in A.H.'s health and demeanor while in mother's presence, as well as her statements during therapy sessions in support of the circuit court's conclusion that mother influenced A.H.'s decisions. Thus, given the aforementioned analysis of the statutory factors, we decline to disturb the circuit court's holding.

Finally, mother contends that the circuit court failed to give appropriate weight to A.H.'s progress while in her custody. Mother emphasizes that A.H. engaged in many extracurricular activities and succeeded academically while living in Virginia and in the primary physical custody of mother. The circuit court acknowledged that A.H.'s grades had dropped after moving to Florida. However, based on Bierbaum's report that family or sexual abuse had occurred, the circuit court was entitled to weigh the totality of these circumstances, the decrease in A.H.'s academic performance against the existence of abuse in making its decision as well. In addition, the circuit court was apprised of other evidence of mother's inappropriate conduct related to A.H. Hence, there was sufficient credible evidence in the record in support of the circuit court's finding that it was in A.H.'s best interests to modify her existing custody and visitation, and "we are precluded from retrying the facts or reweighing the factors." *Armstrong*, 71 Va. App. at 105.

Moreover, from the record, we can only conclude that the circuit court considered all the applicable statutory factors in making these custody and visitation rulings. "[C]ircuit courts are charged with protecting the child's best interests and are granted significant discretion and latitude to craft custody arrangements to ensure as much as possible that the child's interests are, in fact, served and protected." *Wynnycky*, 71 Va. App. at 204. As detailed above, the circuit court considered A.H.'s best interests in determining her custody and visitation. "Because evidence supported the circuit court's factual findings that underlie the circuit court's weighing of the factors and there is nothing inherently unreasonable in its weighing of those factors, 'its ruling must be affirmed on appeal.'" *Id.* at 201 (quoting *Brown*, 30 Va. App. at 538). Accordingly, we find no error in the circuit court's custody and visitation ruling.

### III. CONCLUSION

For the foregoing reasons, we find no error. Therefore, we affirm the circuit court's judgment.

*Affirmed.*